U.S. DISTRICT COURT
Southern District of Georgia
Filed in Office
10:00 A.M.
5-8-2006
Deputy Clerk

# In the United States District Court for the Southern District of Georgia
## Brunswick Division

| | | |
|---|---|---|
| JENNIE ELLIOTT, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| FLYING J., INC., | : | |
| Defendant. | : | NO. CV205-22 |

### O R D E R

Plaintiff, Jennie Elliott, filed this action against Defendant, Flying J., Inc. ("Flying J"), seeking overtime pay pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C. §§ 201 et seq. Presently before the Court is Flying J's motion for summary judgment. For the following reasons, the motion will be **DENIED**.

### FACTS

Elliott began her employment with Flying J on August 28, 2002. Throughout her employment with Flying J, Elliott's titled position was assistant manager of the restaurant, and

she was paid an annual predetermined wage in the amount of $28,000. It is undisputed that Elliott's duties included both managerial and non-managerial duties.

Elliott filed suit on February 25, 2005, alleging that she was entitled to overtime compensation pursuant to the FLSA. Flying J has filed the instant motion asserting that it is entitled to summary judgment because Elliott was exempt from the FLSA's overtime pay requirements.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the non-movant, Adickes v. S.H. Kress and Co., 398 U.S. 144, 158-159, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), but the inferences at the very least must be plausible. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 743 (11th Cir. 1996). The party seeking summary judgment must first identify grounds

AO 72A
(Rev. 8/82)

that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-movant, who "may not rest upon the mere allegations or denials in its pleadings. Rather, its responses . . . must set forth specific facts showing that there is a genuine issue for trial." Walker v. Darby, 911 F.2d 1573, 1576-77 (11th Cir. 1990).

## II. Overtime Pay

Under the FLSA, an employer must pay an employee overtime compensation unless that employee can be categorized as an "employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). The task of defining "executive, administrative, or professional capacity" is delegated to the Secretary of Labor (the "Secretary"). See id.

In August 2004, the Secretary revised the Department of Labor ("DOL") regulations defining the terms, for the first time since 1974.[1] As a general matter, the new regulations

---

[1] Since the new regulations do not apply retroactively, both the old and new regulations are implicated in the instant case. See Kennedy v.
(continued...)

preserve the case law that existed prior to that date by consolidating "the former regulations and interpretations into a unified set of rules and . . . provid[ing] needed simplification and more clarity to a complex regulation." See 69 FR 22122-01, 22127 (codified at 29 C.F.R. Pt. 541).

Previously, two tests were utilized to determine whether the executive exemption applied: a "long test" and a "short test." See 29 C.F.R. § 541.1 (superceded). Salaried employees earning $250 per week, or more, were required to satisfy what has been termed as the "short test." See id. The short test required: (1) that Plaintiff's primary duties consist of management of a customarily recognized department or subdivision; and (2) that Plaintiff customarily and regularly direct the work of two or more employees employed there. 29 CFR § 541.1(f) (superceded).

Under the new regulations, the long/short duties test distinction is eliminated. Instead, the new regulations streamline the previous regulations by maintaining the salary basis test and adopting a single standard duties test. In order to meet the executive exemption under the new regulations, an employee must: (1) receive compensation on a

(...continued)
Commonwealth Edison Co., 410 F.3d 365, 369 (7th Cir. 2005).

salary basis at a rate of at least $455 per week; (2) manage the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof as her primary duty; (3) customarily and regularly direct the work of two or more other full-time employees; and (4) have the authority to hire or fire other employees or have particular weight given to their suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees. 29 C.F.R. § 541.100. For purposes of the instant analysis, it is sufficient that under both the superceded and current regulations, an employee must be paid on a salaried basis and have the primary duty of management to qualify as an exempt employee. See id.; 29 C.F.R. § 541.1 (superceded).

### A.  Salary Basis Test

An employee is paid on a "salary basis" for purposes of the FLSA where, on a weekly or less frequent basis, she receives a predetermined amount of pay, which is not subject to reduction regardless of the quality or quantity of work. Hogan v. Allstate Ins. Co., 361 F.3d 621 (11th Cir. 2004). Pursuant to DOL regulations, an employee does not lose her

AO 72A
(Rev. 8/82)

status as exempt for deductions from pay "for absences of one or more full days occasioned by sickness . . . for which the employee receives compensation under [a bona fide plan, policy or practice of providing compensation for loss of salary occasioned by such sickness or disability]." 29 C.F.R. § 602(b)(2). Deductions may also be made for full day absences occurring "before the employee has qualified under the plan, policy or practice, and after the employee has exhausted the leave allowance thereunder." Id.

Additionally, an employer may preserve the employee's exempt status even after making improper deductions. Through a "window of correction," both the current and superceded regulations protect employers who intend to pay their employees on a salary basis, but who, inadvertently and infrequently, dock an otherwise salaried employee. See 29 C.F.R. § 541.118(a)(6) (superceded) ("where a deduction not permitted by these interpretations is inadvertent, or is made for reasons other than lack of work, the exemption will not be considered to have been lost if the employer reimburses the employee for such deductions and promises to comply in the future."); see also 29 C.F.R. § 541.603(c) ("Improper deductions that are either isolated or inadvertent will not result in loss of the

6

exemption for any employees subject to such improper deductions, if the employer reimburses the employees for such improper deductions.") It is undisputed that Elliott was paid a predetermined annual wage in the amount of $28,000 during the entirety of her employment with Flying J. The parties, however, are in dispute as to whether Elliott's wages were subject to reduction based on the number of hours worked.

Upon review of the record, the Court finds that Elliott's wages were not subject to reduction based on the number of hours worked. Elliott was not paid her full salary on three of approximately 63 paychecks: October 14, 2004, October 28, 2004, and December 9, 2004. The Court need not address the December 9 incident, as it is undisputed the deduction was immediately corrected on December 16, 2004.

The deductions made on the October 14 and October 28 paychecks, similarly, do not support Elliott's assertion that her pay was subject to reduction based on the number of hours she worked. Elliott testified in her deposition that the deductions from her paycheck on both of the remaining dates resulted from full day absences while she was recuperating after surgery. As previously discussed, such deductions are permissible under the regulations. Even were the Court to have

AO 72A
(Rev. 8/82)

found that the deductions were improper, Flying J would be entitled to the protection afforded under the "window of correction" as the deductions were isolated, and Flying J has since compensated Elliott for said deductions. Accordingly, the Court concludes that Elliott was paid on a salary basis for purposes of the FLSA.

### B. Primary Duty

Under the FLSA, an employee's "primary duty" is "the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). In determining an employee's primary duty, the court must consider all "the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." Id. Factors to be considered,

> include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

29 C.F.R. § 541.700(a).

In the current regulations, the DOL has included analysis of "Concurrent Duties" to address the special circumstances of

working supervisors. 29 C.F.R. § 541.106. As the previous "working foreman," this section provides that an employee does not lose her exempt status merely because she performs exempt and non-exempt work at the same time. In order to retain the exemption, however, management must be the *primary* duty. Whether an employee retains her exempt status when the employee performs concurrent duties is determined on a case-by-case basis and based on the factors set forth above. 29 C.F.R. § 541.106(a).

> Generally, exempt executives make the decision regarding when to perform nonexempt duties and remain responsible for the success or failure of business operations under their management while performing the nonexempt work. In contrast, the nonexempt employee generally is directed by a supervisor to perform the exempt work or performs the exempt work for defined time periods.

Id.

Flying J asserts that Elliott's primary duty as assistant manager was management and places significant weight on Elliott's admission that she performed most, if not all, of the management duties contained in 29 C.F.R. § 541.102.[2] It is not

---

[2] 29 C.F.R. § 541.102 provides that "management" generally includes, but is not limited to,

> activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining
> (continued...)

enough, however, that Elliott performed these duties. Instead, the focus is on whether these were her primary duties. Elliott has offered testimony that she spent only 5-10% of her time on exempt activities.[3] She further testified that, even when performing exempt duties, she did so only at the direction of her superiors. As there are disputes regarding the percentage of time Elliott spent performing managerial duties and the relative importance of those duties in comparison to her other duties, Flying J is not entitled to summary judgment.

---

(...continued)
production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

3
    Flying J's assertion that Elliott's affidavit testimony should be excluded as inconsistent with her previous deposition testimony is without merit. In her deposition, Elliott admitted that 50% of the time, there were two or more employees present. She further stated that during the 50% of the time when there were two or more employees present, excluding herself, she was the supervising manager only approximately 10% of the time. Therefore, her affidavit testimony that she supervised two or more employees only 5% to 10% of the time she was employed is consistent with her deposition testimony.

**CONCLUSION**

The Court has read and considered the positions of all parties to this action. For the reasons set forth above, Flying J's motion for summary judgment (Doc. No. 20) is **DENIED**.

**SO ORDERED**, this  8th  day of May, 2006.

_____
JUDGE, UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)